STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
ROBERT BRANDT, PLAINTIFF IN ERROR.

Argued January 17, 1939—Decided May 18, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and
HEHER.

For the defendant in error, *Samuel P. Orlando,* prosecutor
of the pleas.

For the plaintiff in error, *Carl Kisselman.*

PER CURIAM.

The plaintiff in error was convicted of a misdemeanor in
the Camden County Court of Quarter Sessions for violation
of the following statute: (2:135-2)—"Keeping Slot Machines
for Gaming.—Any person who shall have or keep in his place
of business or other premises any slot machine or device in
the nature of a slot machine, which may be used for the play-
ing of (*sic*) money or other valuable things, shall be guilty
of a misdemeanor." The indictment charged that "Robert

Brandt * * * unlawfully did have and keep on his premises * * * a slot machine, commonly known as a pin board machine, which might be used for the purpose of playing for money or other valuable things, contrary to the form of the statute * * *."

In presenting the state's case, the prosecutor of the pleas offered one witness, a policeman of the city of Camden, who testified that he visited the place of business of the defendant and found "a pin board machine" which was, the witness said, a machine that has "a place to put in a nickel." The witness continued, "After you put the nickel in, that releases five balls which you play the machine with by pulling and releasing a plunger. These balls bounce against the pins on the board and drop into holes which have different scores on them. You add up all the numbers and that gives you the total score." The machine was produced as an exhibit before the trial court. The witness further said that the machine had a slot for receiving a five-cent piece; that there was no prize for the high score and that at the time of his inspection someone was playing the machine "for amusement." On cross-examination the witness said there was "no gambling on this machine" at the time in question and, so far as he knew, the contrivance was used for amusement. There was no evidence of the manner in which the machine might be used for gambling.

The term "slot machine" was unknown at common law and our statutory law contains no definition of the term. Our Crimes act, in several places, speaks of slot machines (2:135-1; 2:134-8; 2:134-9), but without definition. Was the term "slot machine" as used by the legislature, intended to include all machines which operate when a coin is placed in the slot? There are many machines of this type—vending machines; weighing machines; machines for playing various games, e. g., baseball, golf, bowling, &c., as well as those in cafeterias which return food when coins are placed in the slot.

The charge of the indictment is the possession of a slot machine which "might be used for the purpose of playing for money," &c. There is no allegation that it was used for

490

such unlawful purpose. In the record there is no evidence that it could be. It is readily perceived, of course, that such machine could be used for gambling. But the statutory phrase "may be used" connotes possibility of use or probability of use at best. The record contains no evidence even of the likelihood of such illicit use of the machine.

The prosecutor, in his argument to uphold this conviction, says in his brief that there is an electric scoring device on the machine. Even so, this alone is not sufficient to establish that the machine might be used for gaming. Further, that "because of the peculiar construction of the machine's playing surface the element of chance is very prominent in determining the final result." We find no such proof in the record, and even though what the state's attorney says is true, which we in no way doubt, the trial court did not rest his conclusion on either of these factors.

The validity of the statute is challenged by the plaintiff in error. It is our duty to uphold the statute if, upon any sound theory, that result may be accomplished. We prefer not to pass upon the validity of this statute upon the record before us. We reverse the conviction on the ground that no evidence whatsoever is in the case before us that the machine "may be used" for gambling. There is nothing by way of proof that this machine or any other of its kind was ever so used or that it could be, and this we think a fatal defect and requires a reversal of the judgment.