3 So.2d 27

### STATE ex rel. GREEN, Deputy Solicitor, v. ONE 5¢ FIFTH INNING BASE BALL MACHINE.

6 Div. 806.

Supreme Court of Alabama.

May 29, 1941.

Rehearing Denied June 30, 1941.

456

Thos. S. Lawson, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for appellant.

Ling & Bains, of Bessemer, for appellee.

GARDNER, Chief Justice.

By this proceeding the State seeks condemnation, as a gambling device, one 5¢ Fifth Inning Base Ball Machine, serial No. VE–3403. General Acts 1931 p. 806. Title 14, Sections 283–292, Code 1940. Upon submission of the cause for final decree on pleadings and proof the court below denied relief and dismissed the bill, and from this decree the State prosecutes this appeal.

There is no proof the machine has been used for gambling, nor that players were offered inducements by way of prizes or other awards. Defendant contends the machine is one for amusement only, in the playing of which skill plays a more or less important part, and as a consequence it does not come within the influence of our condemnation statute. The Court of Appeals of New York in People v. Lavin, 179 N.Y. 164, 71 N.E. 753, 755, 66 L.R.A. 601, 1 Ann.Cas. 165, has made clear the distinction between games of skill and those of mere chance in an interesting discussion, saying: "The test of the character of the game is not whether it contains an element of chance or an element of skill, but which is the dominating element that determines the result of the game?"

And the Massachusetts Court in Commonwealth v. Plissner, 295 Mass. 457, 4 N.E.2d 241, adds that there is an alternative test also, as where the element of chance is present in such a manner as to thwart the exercise of skill or judgment, then it may properly be denominated a game of chance. Such an illustration is to be found in our own case of Howle v. City of Birmingham, 229 Ala. 666, 159 So. 206. Perhaps these distinctions are correctly and aptly stated in 27 C.J. 968, as follows: "It is a game determined entirely or in part by lot or mere luck, in which judgment, practice, skill or adroitness have honestly no office at all or are thwarted by chance; a game in which hazard entirely predominates".

Bearing in mind these distinctions we are persuaded this machine represents a game of chance, and not one of only skill. By placing a nickel in the slot of this machine several balls are released which are ejected on the board by pulling a plunger and striking against the ball. When the ball strikes the projections or bumpers on the board, a certain score would be made, and by hitting certain bumpers a higher score results than

in striking others. The machine has been forwarded here for our inspection. It has been carefully inspected and its operation duly observed.

■ There are more than twenty circular pins which, according to the angle and speed the ball strikes them, may deflect the ball in any direction. It is difficult to conceive how any player could by practice or skill determine the course of the ball after it leaves the plunger. Conceding for the moment that a player by careful practice might develop some degree of skill, yet we are persuaded that any such skill would be so thwarted by hazard that he could not, regardless of his skill, determine the outcome of the game. The element of chance, to our minds, very clearly predominates, and the machine represents a game of chance.

The court below sustained the view that some character of reward must be made to appear as a prerequisite to the condemnation of the machine. In the Act of 1931, supra, the term "gambling device" is given varying definitions. Practically all deal with the matter of reward. But definition (d) differs. It reads as follows: "Any machine, mechanical device, contrivance, appliance or invention, whatever its name or character, which is operated or can be operated as a game of chance". Code 1940, Tit. 14, § 283(d).

■ Defendant insists this act is penal and subject to strict construction,. all of which may well be conceded. But here the language is plain and unambiguous. We take judicial knowledge of conditions generally known of all men, that prevailed in this State prior to the passage of this act and evidently inspired the same. What were known as "slot machines", "pin ball machines", "one armed bandit" machines and various other mechanical devices and inventions were . distributed throughout the State, stimulating the gambling spirit in the citizens and corrupting the morals of the people.

■ It was to curb this evil that the 1931 Act was passed. A question similar to that here presented was before the Florida court, and the following observation taken from the opinion of that court in Eccles v. Stone, 134 Fla. 113, 183 So. 628, 631, is applicable here:

"It is a matter of common knowledge, of which we must take judicial cognizance, that the lure to play the slot machine had become so great as to undermine the morals of many and to lead to the commission of or the indulgence in vices and crime to procure the coins with which to play the machines.

"So the legislature of 1937 carried out the mandate of the majority of the people of the State, and the members their pledges to their constituency, to pass acts which would prohibit the operation of coin-operated gambling devices in this State and enacted Chapter 18143.

"It is also a matter of common knowledge that pursuant to the passage of that act the popular slot machine with its set of pictured wheels, its alluring jackpot and its pull lever, generally known as the one-armed bandit, faded away from the public places and immediately in the places where they had stood were set up the mechanical horse races, marble pin games and other coin-operated mechanical devices, adapted and fit for fast, easy gambling; and it is a matter of common knowledge, of which we cannot plead ignorance, that these machines are generally used as gambling devices and that the gambling element is the principal lure which causes them to be played by the public."

■■ We think it clear enough, from the language of this act, especially definition (d), that the law-making body deemed it necessary to prohibit all such machines and devices which could be operated as a game of chance, regardless as to whether there was a "pay off" or not, in order to fully suppress the gambling evil. That this was within the police power of the State and violated no provision of the Constitution, either State or Federal, is well demonstrated in the Eccles case, supra, as well as in our own case of State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283, and is not here questioned.

No other logical conclusion can be reached from the language of definition (d) when considered in connection with all other definitions and with the known history of the enactment. And this legislation is in harmony with the policy of this State so clearly declared as to a lottery in our Constitution. Section 65, Alabama Constitution 1901. Section 4247, Code 1923, Code 1940, Tit. 14, § 275. Try-Me Bottling Co. v. State, 235 Ala. 207, 178 So. 231.

Defendant lays some stress upon the fact the trial court saw and heard the witnesses. But when the decision rests upon an erroneous interpretation of the statute, that fact loses its influence. The machine is here for demonstration and no matter of disputed issue of fact is involved.

It is, in our opinion, a machine which can be used as a game of chance. The act did not contemplate that it must be a machine which gives a reward or in the operation of which the proprietor offers an inducement. It is open to use as a game of chance for two or more customers or members of the public who operate the machine and who are tempted to gamble on the result of the game. This was clearly one of the evils at which the act was aimed.

The Arkansas court in Stanley v. State, 194 Ark. 483, 107 S.W.2d 532, 534, had for consideration this same character of machine, and the holding was that it was "susceptible to use as a gambling device" and came within the condemnation of the statute. See, also, Steed v. State, 189 Ark. 389, 72 S.W.2d 542, 543, where the observation was that such machines are gambling devices "because the only reasonable and profitable use to which they may be put is use in a game of chance".

And we think our interpretation is likewise supported by our own case of One Penny Marble Machine v. State, 233 Ala. 678, 173 So. 91.

In the cases relied upon by defendant the statutes considered differed from our own. Illustrative is State v. Brandt, 122 N.J.L. 488, 6 A.2d 203, where the court expressly states the act contains no definition. And in Times Amusement Company v. Moss, 160 Misc. 930, 290 N.Y.S. 794, 795, the statute there considered, unlike our own, was merely construed as requiring some reward to be given.

But we need pursue the question no further. We are persuaded this machine comes within definition (d) of the Act of 1931 and is subject to condemnation.

The decree dismissing the bill is reversed and the cause remanded to the court below for further proceedings not inconsistent with the views here expressed.

Reversed and remanded.

All Justices concur, except KNIGHT, J., not sitting.