Richard C. Belser, Montgomery, for appellant.

78 So.2d 819

**CLUB 400 et al.**

v.

**STATE ex rel. Wm. F. THETFORD, Solicitor.**

3 Div. 976.

Court of Appeals of Alabama.

March 15, 1955.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for appellee.

PRICE, Judge.

This appeal is from a decree of the Circuit Court of Montgomery County, Alabama, in Equity, condemning and forfeiting as a gambling device one Williams Deluxe Baseball Machine, Title 14, §§ 283–292, Code 1940.

Respondents' answer to the bill of complaint admits the averment of the bill to the effect that the Club 400 is a corporation chartered under the laws of the State of

Alabama; that said Club is located at 701 Clark Street, Montgomery, and that Fletcher Hawkins, a resident of said County and State, over the age of twenty-one years, is the President of the said Club; that the police of the City of Montgomery, on January 11, 1954, seized the machine in the premises occupied by the Club, but denies that the machine was a gambling device as defined by the laws of this State, and avers that it is a game of skill.

For the State, S. E. Sellers, a Montgomery City policeman, testified that he, along with others, seized the machine at the Club 400 around 2:30 p. m. At that time the Club had not opened for the day and no one was there, and the machine was not in operation. The Club President, Fletcher Hawkins, was called to open the door. The witness described the machine as being five feet long and four feet high, with a playing area shaped like a baseball diamond. Across the top there are seven holes marked "Single," "Out," "Triple," "Home Run," "Double," "Out" and "Single." It has four holes, two on each side about half way down. The two upper holes are marked "Hit." The two lower holes are marked "Out." The game is played by inserting two nickels in a slot marked for that purpose. A button is pressed and the ball is released and rolls straight down the middle of the machine to a plunger type bat which, when operated by the player from a lever on the front, propels the ball into the various holes and, depending on the location of the hole, counts for or against the player. The game is over when the third out is made. If a certain number of runs are made free games are awarded the player.

The witness testified on cross-examination that when the player turns the handle the bat is electrically controlled and knocks the ball across the diamond. The player's control over the ball depends on timing; if he turns the lever too early or too late he might not get any hits or runs at all.

The machine was introduced in evidence and has been forwarded to us for our inspection.

For the defendants Harvey Pugh, the owner of the premises occupied by the Club 400, testified the game is complicated; requires good coordination and timing, and, when played often enough, the player may become skilled in timing and learn exactly the right time to hit the ball, but that in order to be successful in winning an extra game it must be played often. The bat or flipper takes quite a beating in knocking the balls around and sometimes it has to be welded back on. The flipper on this machine had been fixed and was not like it was when the machine was bought. He stated it would not be possible to pay money in exchange for the free games because there is nothing in it for the house, but that "you could bet on it," and the house could gamble on it by paying in cost the price of the replays if it violated the rules of the game. He testified further the bat " * * * could be adjusted where it swings out to hit the ball when it went over there, or it could be fixed to the left over here and still have a chance to get some skill and fun out of the thing * * *".

Subparagraph (d) of Section 283, Title 14, Code 1940, defines a gambling device as "Any machine, mechanical device, contrivance, appliance or invention, whatever its name or character, which is operated or can be operated as a game of chance."

Defendants contend that all objects can be held to be gambling devices under this subdivision and that their constitutional rights have been violated by a discriminatory seizure of the machine in question.

The Supreme Court, in State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 3 So.2d 27, upheld the constitutionality of this statute.

We think it clear from the evidence adduced that the machine could be operated as a game of chance and comes within the condemnation of the statute.

Defendants insist that the machine here involved differs from the one considered by the court in the One 5¢ Fifth Inning Base Ball Machine case, supra, by the absence here of hazards on the playing area to deflect the course of the ball and for that reason this game is one of skill in which the player has absolute control of the ball at all times.

The evidence showed that for a player to acquire skill in the operation of the game requires frequent practice, therefore, the language used by Judge Harwood, in White v. State, 35 Ala.App. 617, 51 So.2d 550, 554, is applicable: "We do not think that the great mass of the patronizing public has either the time, or inclination, to develop whatever latent talent they may have in this field of endeavor. It would appear therefore that as to the public in general this machine (and we interpolate, despite the absence of hazards), is still a game of chance."

The decree of the circuit court is affirmed.

Affirmed.