REQUESTED BY: Senator Howard Lamb
Does the attached amendment to L.B. 523 authorizing the payment of unlimited free games for the playing of coin-operated gaming devices such as video gaming devices, which are played for "amusement only," violate the State Constitution?
Yes, when winning on such machines is based primarily on chance.
As you know, the Nebraska Constitution strictly limits the Legislature on what it may do in authorizing gambling.
Article III, Section 24 of the Nebraska Constitution provides in part: The Legislature shall not authorize any game of chance, nor any lottery, or gift enterprise where the consideration for the chance to participate involves the payment of money for the purchase of property, services, chance or admission ticket, or requires an expenditure of substantial effort or time; . . .
Prior to 1934, the above portion of Section 24 of Article III prohibiting the Legislature from authorizing any games of chance, constituted the entire context of Section 24, Article III.
Since that time there have been three Constitutional Amendments to that section authorizing the Legislature to permit three general areas of gambling; these are:
1. Horse racing by the parimutuel or certificate method when conducted by licensees within the racetrack enclosure.
2. Non-profit lotteries, raffles, and gift enterprises intended solely as business promotions or the proceeds of which are used solely for charitable or community betterment purposes without profit to the promoter.
3. Licensing and regulation of Bingo games conducted by non-profit associations which have been in existence for a period of five years.
Other than the exceptions made to Section 24, Article III of the Constitution as listed above, the Constitution prohibits the Legislature from authorizing any games of chance which require the payment of money or substantial effort or time to play.
In a case involving almost the identical questions as video gaming devices, Baedaro v. Caldwell, 156 Neb. 489
(1953), the Supreme Court of Nebraska determined that an ordinary pinball machine which awarded free games was a game of chance prohibited by the Constitutional provision, set forth above, and which the Legislature could not authorize; it also determined that it was a gambling device.
In doing so, the court stated in part:
The test of the character of the game is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game. The court further noted:
The acquiring of a free game, or games, is made in the event the player gets a high enough score, which is determined by the balls, over which the player has very little control, striking certain bumpers and dropping into certain holes. The court then stated:
Is a pinball machine or bagatelle machine which is coin-operated and which automatically gives the successful player free plays on the machine, depending on the score he makes, a gambling device?
The evidence shows that the machine here considered has very little play when the play is one game for a nickel deposited. However, the chance to obtain a predetermined high score by virtue of which the player may win one or more free games is the inducement to play the machine, and players are allured or enticed to play it for that reason.
Anything affording necessary lure to indulge the gambling instinct and appeal to the gambling propensities of man is a gambling device. See State ex rel. Hunter v. Omaha Motion Picture Exhibitors Assn., 139 Neb. 312, 297 N.W. 547. (Emphasis added).
The appellee's contention is that the words "money or property" as used in section 28-945, R.R.S. 1943, have no application to a machine such as the one at bar, for the reason that there is no play for money, and free games do not constitute property. In this connection we believe the following applicable to the instance case: A predecessor to the pinball machine was what is known as a mint-vending machines, which by chance occasionally delivered discs to the player, have been held to be a gambling device, even though the discs were of the machine. The basis of such holding is that free games are things of value. See, State ex rel. Manchester v. Marvin, 211 Iowa 462, 233 N.W. 486; Howell v. State, 184 Ark. 109, 40 S.W.2d 782; Painter v. State,163 Tenn. 627, 45 S.W.2d 46, 81 A.L.R. 173; Jenner v. State,173 Ga. 86, 159 S.E. 564; State v. Mint Vending Machine,85 N.H. 22, 154 A. 224. There are many other cases to the same effect which we deem unnecessary to cite. It seems reasonable, if free plays of the mint-vending machine are things of value, that free games upon a device such as described in the instant case are likewise things of value. If one game is worth a nickel, it is clear that additional games are things of value, and the rule is the same whether the machine emits discs with which it can be replayed or works automatically as in the instant case. See State v. Wiley, supra. (Emphasis added).
The provision in the amendment and the present statute limiting the play of such games "for amusement only" is of no assistance inasmuch as all games, whether for skill or chance, are for amusement and if free games are awarded it is not for "amusement only."
In Baedaro v. Caldwell, supra, the Supreme Court of Nebraska further stated in this regard:
In Kraus v. City of Cleveland, 135 Ohio St. 43,19 N.E.2d 159, this language appears: "Amusement is a thing of value. Were it not so, it would not be commercialized. * * * Since amusement has value, and added amusement has additional value, and since it is subject to be procured by chance without the payment of additional consideration therefor, there is involved in the game three elements of gambling, namely, chance, price and a prize." See, also, Couch v. State, 71 Okl. Cr. 223, 110 P.2d 613; State ex rel. Green v. One 5 Fifth Inning Base Ball Machine, 241 Ala. 455,3 So.2d 27. (Emphasis added).
It also should be emphasized that the court then wound up the case referring again to the Constitution of Nebraska. The court then stated: As previously stated, Article III, section 24, of our Constitution prohibits any game of chance. This means that the machine is prohibited in any event if it is a game of chance no matter what is given for the play. The use of the word "property" in section 28-945, R.R.S. 1943, when considered and construed with the constitutional provision means anything of value. The free games obtained in the manner heretofore discussed would then constitute property within the contemplation of the constitutional provision and section 28-945, R.R.S. 1943, construed therewith.
The Supreme Court of Nebraska has cited Baedara v. Caldwell, supra, with approval in the later case of Indoor Recreation Enterprises, Inc. v. Douglas, 194 Neb. 715
(1975), a case in which the Supreme Court found the card games of bridge and poker to be games of chance although skill was also involved.
It is elementary, as noted by the Supreme Court in the above case, that the Legislature may not by statute authorize anything that is not authorized by the Constitution, either directly or indirectly. With this in mind, the statutory provisions relating to gambling must always be construed in light of the constitutional limitations. For example, in light of the foregoing case, the Legislature would not have the power to state that a free replay is not something of value or that a device of any kind in which a winner of a replay or other thing of value is determined primarily by chance and which costs money or other thing of value to play is not a game of chance.
When any game or scheme contains the three elements of (1) prize, (2) chance, and (3) price (in money or time to participate), it comprises gambling or a gambling device. Should a machine require predominantly skill to win free games or other prizes, then the element of "chance" would be absent and the machine would be legal without any legislation. Pinball machines, bridge and poker have been found to be predominantly "chance;" this amendment appears designed to authorize games of chance solely because they award free games instead of money or other prizes. As noted above, this does not remove them from being illegal in violation of the constitution. Therefore, insofar as this amendment attempts to authorize games of chance it violates Article III, Section 24 of the Nebraska Constitution.
In addition to the above objections, we are compelled to point out to you that, since there is not time for a fiscal impact statement, this amendment would require a considerable increase in the number of local or state police, hence, considerable additional money, to enforce such a provision, since the only way it could be proved that they were being played for free games only would be to send in undercover men and catch the proprietor in the act of paying off.
Because of the shortness of time involved as discussed with your assistants in our office, and since this question disposes of the other matters, we have not gone into the other questions you sent over.
Respectfully submitted,
ROBERT M. SPIRE Attorney General
Melvin K. Kammerlohr Senior Assistant Attorney General