GARLAND NOVELTY COMPANY *v.* STATE.

Opinion delivered December 20, 1902.

1. CONSTITUTIONAL LAW—GAMING DEVICE—DESTRUCTION.—Sand. & H. Dig., § 1618, making it the duty of circuit judges, etc., on information given, or on their own knowledge, or when they have reasonable ground to suspect that the law is being violated by the operation of gaming devices, to issue their warrant to some peace officer directing him to search for and destroy gaming tables or devices, authorizes the summary destruction of those tables and devices only that are made and kept solely for the purpose of gambling, and that can be used for no other purpose, and the act is not unconstitutional as depriving the owner of his property without due process of law. (Page 141.)

2. GAMING DEVICE—INVESTIGATION BY COURT.—Though Sand. & H. Dig., § 1618, authorizes the summary destruction of gaming devices seized by peace officers, a court issuing a warrant for the seizure of a gaming device may institute a trial to determine the character of the device before ordering its destruction. (Page 142.)

3. SEARCH WARRANT—OATH.—While, under the provision of sec. 15, art. 2, Const. 1874, it was error to issue a search warrant "except upon probable cause, supported by oath or affirmation," the error of issuing a warrant to search for, seize and destroy a certain gaming device, unsupported by oath or affirmation, was not prejudicial where no search was made under the warrant, as the gaming device complained of was publicly exhibited at the time of its seizure. (Page 143.)

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Affirmed.

STATEMENT BY THE COURT.

In January, 1901, the judge of the Garland circuit court issued to the sheriff of that county the following warrant, to-wit:

"The State of Arkansas to R. L. Williams, Sheriff of Garland County, Arkansas:

"Whereas, the undersigned has reasonable ground to suspect that there is in a saloon at No. 198 Central avenue in the city of

Hot Springs, owned by E. A. Smith, a certain gaming device, commonly called a 'slot machine,' kept there contrary to the statute in such cases made and provided; you are therefore commanded to search there for such gambling device, and, if the same be found, then you forthwith seize, hold and take into possession the same, and hold the same, to be dealt with according to law, and for the further orders of the court. You will also summon E. A. Smith and Henry Hall to appear in the Garland circuit court on the 10th day of January, 1901, and show cause, if any, why said gambling device should not be condemned and destroyed according to law. Hereof fail not and make due return of this writ. Given under my hand, this 9th day of January, A. D., 1901.

"A. M. DUFFIE, Circuit Judge."

The sheriff served the warrant as directed, and made the following return thereon:

"State of Arkansas, County of Garland.

"I have this 9th day of January, 1901, duly served the within writ by taking into my possession the slot machine found at the within described place, and have served notice on E. A. Smith and Mr. Hall to appear in the Garland circuit court on the 10th day of January, 1901, at 9 o'clock, a. m., as herein commanded. I have the slot machine in my possession subject to the order of the court.

[Signed]               "R. L. WILLIAMS, Sheriff."

On the return day of the writ, the Garland Novelty Company appeared, and by permission of the court filed its petition of intervention. In said petition the Novelty Company stated that it was the owner of the slot machine which had been placed in the saloon described in the warrant, and which had been seized and taken by the sheriff under the warrant. The company further alleged that the warrant was issued without authority in law, and was void, and that the sheriff had no right to hold the slot machine under said warrant, and it therefore prayed that the warrant be quashed, and the sheriff be ordered to restore the slot machine to the petitioner.

On the hearing of the case, the state introduced evidence showing that the slot machine in question was a gambling device, and that at the time of its seizure it was being used and operated as such. One of these witnesses was the manager of the Novelty Company, which owned the machine. He testified that the company owned fifteen or twenty slot machines which were operated by

it in the city of Hot Springs in hotels and saloons, one of which was the slot machine seized by the sheriff. The slot machines, he said, were made and used for the purpose of playing a game of hazard at which money could be won or lost. The machine, to quote his words, "consists of an upright box with some kind of machinery on the inside with a dial face with numbers on it and a crank to turn it, and it is played by dropping money into the slot and turning the crank, and whether or not the party playing at it will win or not depends on where the hand stops on the dial." Said slot machines, he further stated, "are used for no other purpose but gambling, and cannot be used for other purposes."

After hearing this and other evidence, the court found that the "slot machine was a gambling device, made and used for the purpose of playing a game of hazard thereon, at which money could be won and lost." The court overruled the motion to quash the warrant, and gave judgment that the slot machine be forfeited, and ordered that the sheriff proceed, on the 15th of February, 1901, to publicly burn the same. The company appealed.

*Wood & Henderson,* for appellant.

Section 1618, Sand. & H. Dig., is unconstitutional. 75 Mo. 152; 57 Cal. 251; 78 Ky. 86; 39 Mich. 451.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment of the Garland circuit court directing the sheriff to destroy a certain slot machine, which the court found to be a gambling device and owned and operated as such. The Garland Novelty Company, the owner of the machine, having brought this appeal, now contends that the judgment of the court was without authority of law, and should be reversed, and that is the question we are asked to determine, and which we will now consider.

Our statute declares that it shall be a misdemeanor to set up, keep, or exhibit any gaming table or gambling device of any kind or description. Sand. & H. Dig., § 1613. Another section of the statute makes it the duty of the judges of the circuit courts, on information given or on their own knowledge, or where they have reasonable ground to suspect that the law is being violated by the operation of such gambling devices, to "issue their warrant to some peace officer, directing in such warrant a search for such gaming tables or devices hereinbefore mentioned or referred to, and direct-

ing that, on finding any such, they shall be publicly burned by the officer executing the warrant." Sand. & H. Dig., § 1618.

Counsel for the Novelty Company contend that this section gave the court no authority to institute a trial to determine the character of the property seized, and that the statute is unconstitutional, for the reason that it directs the forfeiture and destruction of property without due process of law. But it will be noticed that the statute only authorizes the destruction of such gaming tables and gambling devices as the statute makes it a crime to keep and exhibit. The statute does not authorize the seizure and destruction of tables or other useful furniture simply because they may be found in a gambling house, or because they may be used in playing cards or other games upon which money is bet, but it permits the destruction of those tables and devices only that are made and kept solely for the purpose of carrying on a business which the law forbids. It is, under our statute, a nuisance to publicly exhibit and operate a machine made solely for the purpose of gambling, and the legislature has, by this statute, authorized the abatement of the nuisance by the destruction of the machine.

There is no question that the legislature has the power to prohibit the public exhibition and operation of gambling devices, and the only room for doubt is whether it had the power to accomplish this result by authorizing the summary destruction of the device itself. While the legislature would have no right to authorize the summary destruction of a house to prevent gaming or to prevent the illegal sale of liquor therein, it being unreasonable, oppressive and unnecessary to resort to such measures for the prevention of crime, yet, if the nuisance be one that can be well abated in no other way, even the destruction of property so valuable as a house may be justified, as where its destruction is necessary to prevent the spread of fire or disease.

And so, as a reasonable means of abating the nuisance which they create, it is now well settled that the legislature may authorize the summary destruction of obscene books and pictures and implements that are capable of an illegal use only. The court of appeals of New York went further than this, and upheld a statute of that state which made the use of nets for taking fish in the waters of the state a nuisance, and authorized the summary destruction of the nets as a means of abating the nuisance. The court held that this statute was not in conflict with the constitutional provision

against depriving the owner of his property without due process of law. *Lawton* v. *Steele,* 119 N. Y. 227. This judgment was afterwards affirmed by the supreme court of the United States. The decision of the court of appeals was unanimous in favor of the legality of the statute, though, on the appeal to the supreme court of the United States, three of the judges of that court dissented from the judgment. But they did so on the ground that the nets which the statute directed to be summarily destroyed were capable of being used for lawful purposes, and were not things which the legislature could lawfully declare to be a nuisance, and authorize the abatement thereof by such a summary proceeding. They impliedly admitted that it might be different with those things which were made and designed for an illegal use only, such as the gaming tables and .gambling devices which our statute permits to be destroyed. Whenever such tables and devices are used, ·the law is violated, and it would therefore seem that a rational way to prohibit the offense and abate the nuisance is to destroy the instrument by which it is committed. While there are cases to the contrary in some of the states, we may say of those decisions, as the supreme court of the United States said of them, that they take a more technical view of the law than the necessities of the case or the adequate protection of the rights of property require. *Lawton* v. *Steele,* 152 U. S. 133.

We are therefore of the opinion that our statute authorizing the summary destruction of gaming tables and gambling devices is not unconstitutional on the ground that it deprives the owner of his property without due process of law.

It will be noticed from the statement of facts that the manager of the company which owned the slot machine ordered to be destroyed testified that such a machine is used only for the purpose of gambling, and can be used for no other purpose. In other words, it was not only a gambling device, but it was of no value as property except for such illegal purpose. If his statement was true as to the nature of the machine, the order for its destruction is fully sanctioned by the statute.

The owner of property thus summarily destroyed ·is not without a remedy if the destruction be wrongful, for, if the property be not such as is contemplated by the statute, the officer is responsible to the owner in damages. For this reason it is advisable that an officer should act with due caution and circumspection before undertaking to destroy property under a statute of this kind. We think, therefore, that the circuit court did well to give the

owner of the property an opportunity to be heard before issuing the order for its destruction. If we should admit the contention of appellant that the statute did not authorize a judicial determination of the question in that way, and that the owner of the property is not bound by the decision, a matter about which we need not express an opinion, still, it was an investigation entirely proper to be made for the information of the judge issuing the order; for, if the judge of the circuit court had the power to issue a warrant for the destruction of this slot machine without notice to the owner thereof, he certainly had the power to make such an order after notice to the owner and a full hearing and consideration of his rights in the matter.

To avoid misapprehension, we will now notice a matter connected with the form of this warrant. It seems that the circuit judge issued the preliminary warrant to seize the slot machine upon his own motion, and without any supporting affidavit. So far as the order to seize is concerned, that was in accordance with the law, but the warrant, following the form of the statute, directs also a search for the slot machine. Now, this statute was enacted before the adoption of our present constitution, which provides that no search warrant shall issue "except upon probable cause, supported by oath or affirmation." Const. 1874, art. 2, § 15. For this reason, if the question before us was whether the order to search was properly issued, it is doubtful if it could be sustained, not being supported by oath or affirmation, as the constitution requires. But that question is not before us; for, though the warrant incidentally directed a search, none was necessary, and none was made, as the slot machine was being publicly exhibited and operated at the time of its seizure. The object of the warrant was not to empower the officer to search, but to empower him to seize the slot machine, and to summon the owners thereof to appear and show cause why it should not be condemned and destroyed. In obedience to this summons, the owner appeared, and objected to the forfeiture, but the court overruled the objections. The company owning the machines does not complain of any search, unreasonable or otherwise, for none was made. The only question presented is whether the court had the power to order the destruction of its property. Under the facts as they appear in the record here, we must answer that question by saying that in our opinion the judgment and order was proper, and it is therefore affirmed.

BATTLE, J., dissents.